UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

BRIAN SLUTZKIN,  )
        Petitioner,  )
         )  No. 21 CV 50106
v.  )  Judge Iain D. Johnston
         )
ANDREW CIOLLI,  )
        Respondent.  )

## MEMORANDUM OPINION AND ORDER

Petitioner Brian Slutzkin has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the reasons that follow, his habeas petition [1] is denied.

## BACKGROUND

Mr. Slutzkin was an inmate at AUSP Thomson when he filed this habeas petition, though the underlying events occurred while he was at USP Allenwood,[1] and he is now at USP Hazelton.[2] His projected release date is May 26, 2022. *See* https://www.bop.gov/inmateloc (last visited February 3, 2022).

Mr. Slutzkin alleges that on January 20, 2020, a disciplinary hearing officer sanctioned him with the loss of 27 days of vested good conduct time and 40 days of non-vested good conduct time after concluding that Mr. Slutzkin had extorted a corrections officer. Petition [1] at 2, 7. Mr. Slutzkin contends that he was wrongly disciplined because all he had done was "simply wrote a letter to [corrections officer] Baptiste and to the courts, placing this officer on notice through courts to explain my missing property." Petition [1] at 7.

According to an incident report completed by officer M. Jenkins, on August 1, 2019, officer Jenkins received word from the prison's mail room that Mr. Slutzkin attempted to send what he had marked as being legal mail to officer Baptiste at his work address. The mail room consulted USP Allenwood's legal staff, which confirmed that Mr. Slutzkin's letter did not meet the Bureau of Prisons' criteria for special legal mail, and so staff opened and read the letter. *See* Bureau of Prisons' Program Statement 5265.14 ("Correspondence") § 540.14. In the letter, Mr. Slutzkin claimed that officer Baptiste and others entered his cell on two occasions and "embezzled, converted and/or purloined" about $1,511.00 worth of his personal items. Response [10] at 26. The letter demands the return of the "sum of approximately $1511 USD, pursuant to 18 U.S.C. 645 and <u>all</u> other property and rights to property as stolen, confiscated, and

---

[1] A habeas petition is properly filed in the district where the inmate is located at the time of filing. *Al–Marri v. Rumsfield*, 360 F.3d 707, 712 (7th Cir.2004).
[2] " . . . a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

expropriated." *Id.* In the letter Mr. Slutzkin also provides notice of his intent to "criminally prosecute all those responsible." *Id.* at 27.

Mr. Slutzkin received a copy of the incident report on August 1, 2019, and officer K. Bittenbender conducted a disciplinary hearing on September 17, 2019. *Id.* at 19-21. Mr. Slutzkin requested a staff representative for the hearing, and officer J. Mowery served as Mr. Slutzkin's representative. *Id.* at 19. According to officer Bittenbender's Discipline Hearing Officer Report, Mr. Slutzkin stated during his hearing that he sent the letter to officer Baptiste because he "never heard back from the TORT claim I submitted and if I didn't get my property back then it would go to commercial court." Response [10] at 19. He also submitted a written statement in which he states that his letter to officer Baptiste was legal mail that should not have been opened, and that he cannot extort someone by demanding the return of his own property. Response [10] at 24. Mr. Slutzkin did not present any witnesses. *Id.* at 19.

After the hearing, officer Bittenbender issued a written decision on September 23, 2019, in which he concluded that the greater weight of the evidence supported a conclusion that Mr. Slutzkin had engaged in extortion in violation of Prohibited Act 204 under the Inmate Discipline Program, which is "Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing." Bureau of Prisons Program Statement 5270.009 ("Inmate Discipline Program") at 46. The evidence that officer Bittenbender relied on included the incident report, a statement from the mail room employee who turned over Mr. Slutzkin's letter to officer Jenkins, a written statement by Mr. Slutzkin from the date of the incident in which he stated, "I accept everything for value paid to the order of Brian Slutzkin in the amount of $1,000,000.00 USD" citing UCC § 3-108, and Mr. Slutzkin's oral and written statements at the disciplinary hearing. Response [10] at 20. Officer Bittenbender sanctioned him with the disallowance of 27 days of earned good conduct time, the forfeiture of 40 days of unvested good conduct time, and 8 months' loss of commissary. *Id.* at 19-21.

Mr. Slutzkin appealed, but the Central Office ultimately affirmed the disciplinary decision. Petition [1] at 11.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v . Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent has not raised exhaustion as an affirmative defense, and Mr. Slutzkin received a decision from the Central Office denying his appeal, Petition [1] at 11, and so it appears he has exhausted.

In his petition, Mr. Slutzkin alleges that the respondent violated his rights to due process in four ways. The Court considers each in turn.

**1.     Staff Representative Did Not Gather Evidence**

Mr. Slutzkin alleges that his due process rights were violated because his staff representative was denied the ability to meet with him, and to gather documents and other evidence that would have proved his innocence. Petition [1] at 7. Although he attaches to his reply brief a list of evidence he contends he asked his staff representative to gather, such as any pictures or video of the incident, signed statements from inmates and staff, and copies of the employee conduct manual signed by the officers involved, he never identifies what that evidence would have shown, or explains how it would have undermined the disciplinary hearing officer's conclusions. As a result, the Court cannot assess whether any of this evidence was exculpatory or even relevant. *See Rasheed-Bey v. Duckworth*, 969 F.3d 357, 361 (7th Cir. 1992) (inmate entitled to exculpatory evidence unless disclosure would threaten institutional concerns). To comport with Mr. Slutzkin's due process rights, the hearing officer's decision merely needed to be supported by some evidence. *See Scruggs*, 485 F.3d at 941. Officer Bittenbender's decision was supported by some evidence, including the letter itself demanding money for the missing items and threatening to pursue criminal charges against officer Baptiste.

Mr. Slutzkin is unable to establish a due process violation for the additional reason that under *Wolff*, a prisoner is entitled to a staff representative only if he is illiterate or his case is complex. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Slutzkin is not illiterate as demonstrated by his briefs, and his case is not complex because it merely involves a letter he wrote. He contends in his reply brief that his case is complex because he was unable to gather documents on his own before his hearing because he was in the Special Housing Unit. Reply [13] at 6. But, as noted above, he never explains the relevance of any of the evidence he was unable to gather or how it would have made a difference to the outcome of his disciplinary proceeding. Thus, Mr. Slutzkin was not entitled to a staff representative, and so any inability to meet with one or have one gather evidence at his direction did not violate his due process rights.

**2.      Excessive Sanctions**

Next, Mr. Slutzkin contends that the sanctions imposed were excessive because the disciplinary hearing officer was "not permitted to take SGT or GTC day prior to the year of the alleged infraction." Petition [1] at 7. As best as the Court can tell, Mr. Slutzkin contends that he could not lose more good conduct time during a single year than he can earn that year. But under the statute that provides for good conduct time credits, 18 U.S.C. § 3624(b)(2), "credit awarded under this subsection . . . shall vest on the date the prisoner is released from custody." Accordingly, a prisoner's good conduct time "may be revoked at any time before the date of [his] release." *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011). Under the Inmate Discipline Program, the sanctions available for the violation of a 200-level prohibited act include the disallowance of up to 27 days "of good conduct time credit available for year," plus forfeiture of "earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less." Inmate Discipline Program at 49. Mr. Slutzkin's sanction fall within that limit, and therefore he has not established that his sanctions were excessive.

**3.      Conduct Did Not Amount to a Violation**

Next, Mr. Slutzkin argues that his letter to officer Baptiste did not amount to "extortion," but rather was merely a notice to return his belongings, and in any event he could not extort his own property. The Inmate Discipline Program does not define extortion. It is commonly used to refer to the "action or practice of extorting or wresting anything, *esp.* money, from a person by force or by undue exercise of authority or power; an instance of this; an act of illegal exaction," *Extortion*, Oxford English Dictionary (2d ed. 1989), while "extort" is defined as to "wrest or wring (something) from a person," *Extort*, Oxford English Dictionary (2d ed. 1989). Courts normally defer to the Bureau of Prisons' interpretation of the wording of its own rules because "latitude is necessary to ensure safety and order in a dangerous prison environment." *Hughes v. Werlinger*, No. 11 CV 219, 2014 U.S. Dist. LEXIS 58425, at *15-16 (W.D. Wisc. Apr. 28, 2014) (deferring to Bureau's interpretation of policy against possession of a "hazardous tool" to include the possession of a cellular telephone charger). One court applied that principle to leave undisturbed a disciplinary hearing officer's determination that an inmate's threat to file a civil suit against a staff member was extortion. *See Norris v. Terris*, No. 13 CV 13825, 2013 U.S. Dist. LEXIS 183222, *6-9 (E.D. Mich. Dec. 4, 2013), *Report and Recommendation adopted by* 2014 U.S. Dist. LEXIS 2943 (E.D. Mich. Jan. 10, 2014).

Mr. Slutzkin's argument that he was merely asking for the return of his belongings understates the nature of his letter to Mr. Baptiste. The letter does not merely ask for the return of his items, but demands the payment of $1,500 and threatens to bring a criminal prosecution. Given the commonly understood meaning of extortion, the disciplinary hearing officer's interpretation of extortion to include Mr. Slutzkin's demands and threats to a correctional officer falls within the latitude afforded the Bureau when interpreting its own policies to ensure safety and order. According to Mr. Slutzkin's own statement during the disciplinary hearing, he sent the letter only after he never received a response to what appears to be an administrative proceeding he initiated (his statement refers to "TORT" proceedings). But the next steps

available to him were to exhaust his administrative appeals and then file suit, not to extort corrections staff.

The Court notes that in his original petition, Mr. Slutzkin did not present a claim that the speech in his letter was protected under the First Amendment, and the government did not address such a claim because Mr. Slutzkin did not raise one, *see* Response [10] at 5. Mr. Slutzkin mentions the First Amendment in his reply brief, but never develops any supporting argument, and in any event arguments first raised in a reply brief are dirty pool and forfeited. *See Narducci v. Moore*, 572 F. 3d 313, 324 (7th Cir. 2009).

**4.     Bias of Decision Maker**

Finally, Mr. Slutzkin contends that disciplinary hearing officer Bittenbender was biased against him because officer Bittenbender knowingly relied on fabricated evidence from outside the hearing record and forced him to face the wall during the hearing, all in violation of unspecified Bureau of Prison policies, its handbook, and the Code of Federal Regulations. Petition [1] at 8. In his reply brief, he adds that officer Bittenbender was also biased because he had filled in Mr. Slutzkin's sanction before the hearing even started, also in violation of prison policy. Reply [13] at 4.

To establish a due process violation based on bias, Mr. Slutzkin must show that his decision-maker was somehow involved in the underlying incident or its investigation. *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003). Mr. Slutzkin does not contend that officer Bittenbender participated in the investigation, but rather that he imposed discipline even though he knew the evidence to be fabricated. However Mr. Slutzkin does not identify what evidence he contends was fabricated, or how officer Bittenbender knew it was fabricated. Mr. Slutzkin's contention that officer Bittenbender pre-judged his case because he had already filled in the sanctions to be imposed is sheer speculation. Mr. Slutzkin's speculation does not overcome the presumption of honesty and integrity afforded hearing officers who were uninvolved in the events underlying the disciplinary report or its investigation. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). To the extent that Mr. Slutzkin contends that the disciplinary hearing officer violated prison policy, a violation of prison policy is not the basis of a due process claim. *See Rivero v. Roal*, No. 12 CV 132, 2013 U.S. Dist. LEXIS 155711, at *9-10 (S.D. Ill. Oct. 2, 2013) ("the regulations themselves do not create a protected liberty interest or define the procedural requirements of due process."), *Report and Recommendation adopted by* 2013 U.S. Dist. LEXIS 155295 (S. D. Ill. Oct. 30, 2013).

## CONCLUSION

For the reasons given, Mr. Slutzkin's petition [1] is denied, and this case is closed. The motion to expedite judgment [14] is denied as moot. Mr. Slutzkin is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Slutzkin need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal

Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.  *See* Fed. R. App. P. 4(a)(4)(A)(iv).  A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).  The time to file a Rule 59(e) or 60(b) motion cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).


Dated:  February 3, 2022          By:    _____
                                         Iain D. Johnston
                                         United States District Judge